UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND
CASE NO. 10-CV-_____

CHRISTINE SNIPES                                                                                    PLAINTIFF

vs.                                         **COMPLAINT**
                                      **JURY TRIAL DEMANDED**

KROGER COMPANY,                                                                                 DEFENDANT
an Ohio corporation

       Serve:     CSC – Lawyers Inc. Service Co.
                        421 West Main Street
                        Frankfort, KY 40601
                        (registered agent for service of process)

JANET HOGGE                                                                                        DEFENDANT

       Serve:     Janet Hogge
                        14870 Cranston Road
                        Morehead, KY 40351

***************

Plaintiff Christine Snipes for her Complaint against defendants Kroger Company and Janet Hogge herein states as follows:

**I**

**Nature of the Case**

1. This is an action pursuant to the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Kentucky Civil Rights Act (KCRA), KRS Chapter 344, seeking recovery of damages, including lost pay and benefits, compensatory damages for emotional distress and mental anguish, physical pain and suffering, attorney's fees, litigation expenses and

costs arising from defendants' unlawful actions in violation of the ADA and KCRA.

## II

## Jurisdiction and Venue

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1331 because it includes claims arising under federal law and has supplemental jurisdiction under 28 U.S.C. § 1367 because those claims are so related to the federal law claims as to form part of the same case or controversy. Venue is proper in this Court because the claims arose in Rowan County, Kentucky.

## III

## Parties

3. Plaintiff Christine Snipes is a citizen of the United States of America and a resident of Rowan County, Kentucky.

4. Defendant Kroger Company (Kroger) is an Ohio corporation that maintains a place of business in Rowan County, Kentucky. Kroger's agent for service of process, according to electronic databases maintained by the Kentucky Secretary of State, is CSC – Lawyers Inc. Service Company, 421 West Main Street, Frankfort, KY 40601.

5. Defendant Janet Hogge is, upon information and belief, a resident of Rowan County, Kentucky. She is sued in this action because she took actions giving rise to individual liability and causing injury to Snipes in Rowan County, Kentucky.

2

## IV

## Facts Giving Rise to Lawsuit

6. At all times pertinent hereto, Snipes has been an employee of Kroger Company within the meaning of 42 U.S.C. § 12111(4) and KRS 344.030(5).

7. At all times pertinent hereto, Kroger Company has been a "covered entity" within the meaning of 42 U.S.C. § 12111(2) and the employer of Snipes within the meaning of 42 U.S.C. § 12111(5)(A) and and KRS 344.030(2).

8. At all times pertinent hereto, Snipes was a "person" and/or "individual" within the meaning of KRS 344.010(1).

9. At all times pertinent hereto, Hogge was a "person" and/or "individual" within the meaning of KRS 344.010(1).

10. In and about May 2000, Snipes was involved in an automobile accident.

11. As a result of the aforementioned automobile accident, Snipes suffered permanent injuries to her back and spinal and cervical column.

12. As a result of the injuries sustained in his automobile accident and their further deterioration, Snipes is substantially limited in the following major life activities within the meaning of both the ADA, 42 U.S.C. § 12102(2)(A) and KRS 344.010(4)(a): caring for oneself, performing manual tasks, walking, standing and/or lifting.

13. At all times pertinent hereto, Snipes suffered from a "disability" within the meaning of the ADA, 42 U.S.C. § 12102(1) and KRS 344.010(4).

14. At all times pertinent hereto, Snipes was a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12111(8) and KRS 344.030(1).

15. In and about April 2000, Snipes began employment with Kroger Company at its store located in Rowan County, Kentucky.

16. In and about 2006, Snipes, because of her disability, requested of Kroger a reasonable accommodation intended to provide relief for her disability during the course of her work shift.

17. As a result of Kroger's refusal to engage in a dialogue with her regarding a reasonable accommodation and its refusal to recognize its legal duties to Snipes imposed by the ADA and KCRA, Snipes was compelled to contact Norb Ryan, the Kentucky state ADA coordinator, regarding her rights under the ADA and KRS Chapter 344.

18. Ryan conferred with Kroger and discussed with Hogge rights that Snipes had under the ADA and KRS Chapter 344, as well as the duties and obligations that Kroger, as Snipes's employer, had.

19. Although Ryan is not a lawyer, he was compelled by Kroger's intransigence toward Snipes to continually prod it to recognize Snipes's rights and its duties under the ADA and KCRA to a degree and extent that Hogge began referring to Ryan as "that lawyer."

20. As a result of Snipes' contacts to Ryan, Ryan's intervention and action, Kroger, as a reasonable accommodation to Snipes's disability, allowed a chair with a back to be in a position easily used, on an intermittent and when reasonably possible so as to not interfere with her performance of her work duties basis, by Snipes during the course of her employment to provide relief for her disability.

21. From 2006 to April 2008, Snipes was able to use the chair as a reasonable accommodation for her disability.

22. In April 2008, Snipes was informed by Hogge that Kroger had determined to get rid of the chair that Snipes had been provided as a reasonable accommodation for her disability.

23. In April 2008, Snipes was also informed by Hogge that she should secure from her treating doctor, Dr. Mark Delomas, a release stating that she no longer needed the chair as a reasonable accommodation for her disability.

24. Snipes was informed that, in absence of a letter from Dr. Delomas stating that she no longer required the chair as a reasonable accommodation for her disability, she would be terminated from her employment. However, Kroger relented, after intervention on Snipes's behalf by a union steward, James Hall, and re-assigned Snipes to a demo job.

25. Snipes was informed in April 2008 by Vickie Oliver, who was employed as a district or zone manager for Kroger, that Kroger would tie up

in court for years any legal action that she might try or take regarding and/or arising from Kroger's termination of the reasonable accommodation provided for her disability.

26. Oliver, also in April 2008, informed Snipes that Kroger had fired other employees with disabilities and that she wouldn't care to fire Snipes also, notwithstanding Snipes's excellent job performance. Oliver further informed Snipes that she had fired for Kroger persons in wheelchairs and wouldn't have any problem firing Snipes, notwithstanding Snipes's disability.

27. Oliver, in all her statements to Snipes and in regard to Snipes's request for reasonable accommodation for her disability, acted pursuant to and within the scope of her agency for Kroger.

28. Eventually and after temporarily reassigning Snipes and threatening her with termination of her employment, Snipes was restored to the position of U-Scan clerk in and about August 2008.

29. While Snipes was returned to the position of U-Scan clerk, Kroger did not restore the chair at her work area and/or at a location where it could serve usefully as a reasonable accommodation for Snipes's disability.

30. Instead of returning the chair to Snipes's immediate work area and/or a location where the chair could serve usefully as a reasonable accommodation for her disability, Kroger directed and ordered that the chair be placed approximately 20 feet away from Snipes's work area.

6

31. The location of the chair approximately 20 feet away from Snipes's work area eliminated its useful service, as a practical matter, as a reasonable accommodation for Snipes's disability.

32. After removing the chair from Snipes's work area and eliminating it, as a practical matter, from further useful service as a reasonable accommodation for Snipes's disability, Kroger insisted that she use a plastic shopping basket as a means to obtain relief from her disability.

33. Rob Winkler, a human resources director or manager for Kroger, insisted that Snipes used a plastic shopping basket as a means to obtain relief from her disability.

34. The plastic shopping basket was unsuitable and unsafe for use by Snipes as intended by Kroger.

35. On or about August 25, 2008, the unsuitability and unsafe use of the plastic shopping basket was demonstrated as Snipes fell, as a result of the basket's instability, and broke her wrist.

36. As a direct and proximate result of the broken wrist suffered on August 25, 2008, as a result of Kroger's revocation of the reasonable accommodation afforded Snipes for her disability, Snipes has suffered, is suffering and is reasonably certain to suffer in the future physical pain and suffering.

37. As a direct and proximate result of the broken wrist suffered on August 25, 2008, as a result of Kroger's revocation of the reasonable

accommodation afforded Snipes for her disability, Snipes has suffered, is suffering and is recently certain to suffer in the future emotional distress and mental anguish, embarrassment and humiliation.

38.     As a direct and proximate result of the broken wrist suffered on August 25, 2008, as a result of Kroger's revocation of the reasonable accommodation afforded Snipes for her disability, Snipes has suffered, is suffering and is reasonably certain to suffer in the future lost pay and benefits.

39.     On or about November 4, 2008, Snipes returned to her employment with Kroger.

40.     Following her return to work from her broken wrist, Snipes renewed her request that the chair be returned to her work area as it was prior to April 2008, so that it could resume service as a reasonable accommodation for her disability.

41.     Kroger continued to reject Snipes's request that the chair be returned to her work area, as it was prior to April 2008, so that it could resume services reasonable accommodation for her disability.

42.     As a direct and proximate result of Kroger's refusal to return the chair to Snipes's work area, as it was prior to April 2008, so that the chair could resume service as a reasonable accommodation for her disability, she has suffered, is suffering is recently certain to suffer in the future physical pain and suffering.

43. As a direct and proximate result of Kroger's refusal to return the chair to Snipes's work area, as it was prior to April 2008, so that the chair could resume service as a reasonable accommodation for her disability, she has suffered, is suffering is recently certain to suffer in the future emotional distress and mental anguish.

44. On or about March 31, 2009, Snipes through counsel and with the assistance of her treating physician, Dr. Mark Delomas, again reiterated to Kroger the nature of her disability and her need for a reasonable accommodation, specifically that the chair be in her work area where it is readily available for her use as necessary during the course of her employment. Kroger was specifically advised that its removal from her work area, as Kroger had insisted, was frustrating and precluding the chair's service as a reasonable accommodation to Snipes' disability. A true copy of the correspondence is tendered as exhibit A to this complaint.

45. Kroger received the correspondence tendered as Ex. A to this complaint.

46. Kroger did not respond to the request through Snipes's counsel for return of the chair to her work area as a reasonable accommodation for her disability.

47. Kroger did not engage in an interactive process with Snipes in response to her request for a reasonable accommodation for disability.

48. On or about February 6, 2010, Snipes through counsel again reiterated to Kroger the nature of Snipes' disability and her need for a reasonable accommodation, specifically that the chair be in her work area where it is readily available for her use as necessary during the course of her employment. Kroger was specifically advised that its removal from her work area, as Kroger had insisted, was frustrating and precluding the chair's service as a reasonable accommodation to Snipes' disability. A true copy of the correspondence is tendered as exhibit B to this complaint.

49. Kroger received the correspondence tendered as exhibit B to this complaint.

50. Kroger did not respond to the request from Snipes through counsel for return of the chair to her work area as a reasonable accommodation for her disability.

51. Kroger continued its refusal to engage in an interactive process with Snipes in response to a request for a reasonable accommodation for her disability.

52. Kroger has acted with reckless disregard for Snipes's rights under the ADA and with full knowledge that its actions may violate federal law including but not limited to threatening Snipes's job, causing her physical injury, pain and suffering, attempting to intimidate her from acting to assert and/or protect her rights, actions that have not taken place in isolation but have stretched out over a number of years.

53. Hogge has aided and abetted unlawful employment practices by Kroger including but not limited to subjecting Snipes to extraordinary scrutiny and differential treatment, chastising and attempting to intimidate Snipes from the very little use that Snipes could make of the chair, informing and reminding Snipes, on numerous occasions, that Kroger would not have any problem firing Snipes notwithstanding Snipes's disability and other wrongful acts that have aided and abetted Kroger's unlawful employment practices.

54. Prior to filing this lawsuit, Snipes fulfilled all conditions precedent including filing a charge of discrimination with the Equal Employment Opportunity Commission and receiving therefrom a "right to sue" letter.

## V

## CAUSES OF ACTION

### Count 1 – Discrimination by Failure to Allow or Provide a Reasonable Accommodation In Violation of the ADA

55. Snipes incorporates paragraphs 1 through 54 hereof as if fully set forth herein.

56. The ADA, 42 U.S.C. § 12112, prohibits discrimination by a covered entity against an employee that is a qualified individual with a disability.

57. The ADA, 42 U.S.C. § 12112(b)(5)(A), includes within the definition of prohibited discrimination the failure to make reasonable

accommodations to the known physical limitations of an otherwise qualified individual with a disability who is an employee unless doing so would impose an undue hardship on the employer.

58. The employer's failure to offer a reasonable accommodation is direct evidence of discrimination. *Kleiber v. Honda of America Mfg., Inc.,* 485 F.3d 862, 868 (6th Cir. 2007).

59. The ADA requires that an employer and employee engage in an interactive process to determine whether a reasonable accommodation can be achieved. *Kleiber v. Honda of America Mfg., Inc.,* 485 F.3d 862, 871 (6th Cir. 2007).

60. Both employer and employee have a duty to participate in good faith in the interactive process to determine whether a reasonable accommodation can be achieved. *Kleiber, supra.*

61. Kroger has failed to provide or allow a reasonable accommodation to Snipes, who is a qualified individual with a disability.

62. Kroger could and can allow a reasonable accommodation for Snipes without undue hardship.

63. Kroger has discriminated against Snipes in violation of the ADA by failing to allow or provide a reasonable accommodation for her disability.

64. As a direct and proximate result of Kroger's unlawful discrimination against Snipes arising from its failure to allow or provide a reasonable accommodation for her disability, she has suffered, is suffering

and is reasonably certain to suffer in the future damages including lost pay and benefits, physical pain and suffering, emotional distress and mental anguish.

65. Kroger has acted with reckless disregard for Snipes's federally-protected rights in discriminating against her in violation of the ADA.

### Count 2 - Discrimination by Failure to Allow or Provide a Reasonable Accommodation In Violation of the KCRA

66. Snipes incorporates paragraphs 1 through 65 hereof as if fully set forth herein.

67. The KCRA prohibits discrimination by an employer against an employee that is a qualified individual with a disability.

68. The KCRA includes within the definition of prohibited discrimination the failure to make reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability who is an employee unless doing so would impose an undue hardship on the employer.

69. The employer's failure to offer a reasonable accommodation is direct evidence of discrimination under the KCRA.

70. The KCRA requires that an employer and employee engage in an interactive process to determine whether a reasonable accommodation can be achieved.

71. Both employer and employee have a duty to participate in good faith in the interactive process to determine whether a reasonable accommodation can be achieved.

72. Kroger has failed to provide or allow a reasonable accommodation to Snipes, who is a qualified individual with a disability.

73. Kroger could and can allow a reasonable accommodation for Snipes without undue hardship.

74. Kroger has discriminated against Snipes in violation of the KCRA by failing to allow or provide a reasonable accommodation for her disability.

75. As a direct and proximate result of Kroger's unlawful discrimination against Snipes arising from its failure to allow or provide a reasonable accommodation for her disability, she has suffered, is suffering and is reasonably certain to suffer in the future damages including lost pay and benefits, physical pain and suffering, emotional distress and mental anguish.

**Count 3 - Discrimination In the Terms and Conditions of Employment On Account of Disability In Violation of the ADA**

76. Snipes incorporates paragraphs 1 through 75 hereof as if fully set forth herein.

77. The ADA, 42 U.S.C. § 12112(a), prohibits discrimination by a covered entity against an employee that is a qualified individual with a disability on account of disability in the terms and conditions of employment.

14

78. Kroger has subjected Snipes to discrimination on account of her disability in the terms and conditions of her employment.

79. As a direct and proximate result of Kroger's unlawful discrimination against Snipes in the terms and conditions of her employment, she has suffered, is suffering and is reasonably certain to suffer in the future damages including lost pay and benefits, physical pain and suffering, emotional distress and mental anguish.

80. Kroger has acted with reckless disregard for Snipes's federally-protected rights in discriminating against her in violation of the ADA.

**Count 4 - Discrimination In the Terms and Conditions of Employment On Account of Disability In Violation of the KCRA**

81. Snipes incorporates paragraphs 1 through 80 hereof as if fully set forth herein.

82. The KCRA prohibits discrimination by an employer against an employee that is a qualified individual with a disability on account of disability in the terms and conditions of employment.

83. Kroger has subjected Snipes to discrimination on account of her disability in the terms and conditions of her employment.

84. As a direct and proximate result of Kroger's unlawful discrimination against Snipes in the terms and conditions of her employment, she has suffered, is suffering and is reasonably certain to suffer in the future damages including lost pay and benefits, physical pain and suffering, emotional distress and mental anguish.

**Count 5 – Aiding and Abetting Discrimination In Violation of the KCRA**

85.     Snipes incorporates paragraphs 1 through 84 hereof as if fully set forth herein.

86.     It is a violation of the KCRA, KRS 344.280, for an individual to aid and abet discriminatory and unlawful employment practices that violate the KCRA.

87.     Hogge has aided and abetted the discriminatory and unlawful employment practices to which Kroger has subjected Snipes.

88.     As a direct and proximate result of Hogge's aiding and abetting of unlawful employment practices by Kroger, Snipes has suffered, is suffering and is reasonably certain to suffer in the future damages including lost pay and benefits, physical pain and suffering, emotional distress and mental anguish.

## VI

## DEMAND FOR RELIEF

WHEREFORE, plaintiff Christine Snipes demands the Court enter judgment as follows:

(1)     awarding her compensatory damages in an amount in excess of this Court's jurisdictional minimum and such additional amount as determined by a jury to be fair based on the evidence at trial to compensate her for the lost wages and benefits, emotional distress and mental anguish, embarrassment and humiliation, and physical pain and suffering, past, present and future, caused by defendants' unlawful actions;

(2)     awarding her punitive damages based on Kroger's reckless disregard for her rights under the ADA to punish its violations and deter repetition of like misconduct;

(3)     ordering defendants to reasonably accommodate Snipes' disability specifically by providing a chair in her work area such as was successfully done in the time period 2006 to April 2008;

(4)     award and/or grant her any other remedies allowable under either the ADA or KCRA;

(5)     award her costs, reasonable attorney's fees, and litigation expenses pursuant to Fed.R.Civ.Pro. 54, KRS 344.450 and the applicable provisions of the ADA; and,

(6)     all such other relief to which she proves entitled.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands pursuant to Fed.R.Civ.Pro. 38 trial by jury of all issues herein so triable.

Respectfully submitted,

BY: /s/ Robert L. Abell
ROBERT L. ABELL
120 North Upper Street
PO Box 983
Lexington, KY 40588-0983
(859) 254-7076
(859) 281-6541 (facsimile)
E: Robert@RobertAbellLaw.com
COUNSEL FOR PLAINTIFF